```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/3/2019
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
UNITED STATES OF AMERICA,

                                  Plaintiff,

              -against-

ANDRE COFIELD,

                                Defendant.
------------------------------------------------------------- X

17 Cr. 610 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

On April 15, 2019, the Court held a hearing under *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), to resolve disputed facts related to Defendant Andre Cofield's sentencing. For the reasons below, a two-level offense enhancement for firearms possession, in connection with the sentencing offense, is appropriate under the Sentencing Guidelines.

**I.**     **BACKGROUND**

Cofield was charged with conspiracy to distribute and possess with the intent to distribute 280 grams or more of crack cocaine, marijuana, heroin and cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), 841(b)(1)(C) and 841(b)(1)(D). On November 26, 2018, Cofield pleaded guilty to the lesser included offense of participating in a conspiracy to distribute and possess with the intent to distribute a detectable amount of crack cocaine, under 21 U.S.C. §§ 846 and 841(b)(1)(C). The parties stipulated in the plea agreement that: (1) the offense involved 2.8 to 8.4 kilograms of crack cocaine, resulting in a base offense level of 34 (U.S.S.G. § 2D1.1(a)(5) and 2D1.1(c)(3)), and that (2) Cofield was an organizer or leader of a drug trafficking organization, involving five or more participants, resulting in a four-level increase (U.S.S.G. § 3B1.1(a)). The parties also agreed, based on information then available, that Cofield had nine

criminal history points, resulting in a Criminal History Category of IV. The parties further stipulated to a Guidelines range of 235 to 240 months' imprisonment.

The parties disagree about the applicability of a two-level sentencing enhancement, under U.S.S.G. § 2D1.1(b)(1), for Cofield's or his co-conspirators' possession of dangerous weapons (i.e., firearms) in connection with the offense.[1] The Government also requests that the Court consider an incident where Cofield allegedly shot a victim, Lance Harris, at the Mill Brook Houses in the Bronx, as a sentencing factor under 18 U.S.C. § 3553(a).

With or without the disputed enhancement, the Guidelines recommendation for Cofield's sentence is the same under U.S.S.G. 5G1.1(a) -- i.e., 240 months (twenty years) -- because the offense to which Cofield pleaded guilty carries a twenty-year statutory maximum.

## II. HEARING TESTIMONY AND FINDINGS

At the *Fatico* hearing, the Government called two witnesses: (1) Andy Seda, who grew up with Cofield in the Mill Brook Houses, the primary location of the narcotics trafficking at issue, and (2) FBI Special Agent Anthony Snead who interviewed Harris.

Seda testified that Cofield lived in an apartment at Mill Brook with three roommates, with whom Seda, but not Cofield, were in the MBG gang together. Cofield was in a different gang, the Bloods. Seda visited the unit nearly every day. He saw the residents, including Cofield, regularly cooking, selling and storing crack cocaine in the unit. The residents also kept "all types of guns" belonging to the MBG gang in their bedroom drawers.

Seda further testified about the day that Cofield shot Harris. Earlier that day, Seda saw Cofield, Harris, Harris's nephew, Devin White, Michael White and James White in a different

---

[1] The Government no longer seeks an additional two-level enhancement, under U.S.S.G. § 2D1.1(b)(2), for using, credibly threatening to use or directing the use of violence.

Mill Brook apartment. Three guns lay on the living room table. Cofield and Harris were both in the Bloods, and Devin White, Michael White and Seda were in MBG. After Seda left, Cofield shot Harris behind a building and gave Michael White the gun, which Seda learned about from Michael White later. Seda testified that he also learned from Devin White that Harris had set up a shooting of Cofield previously and Cofield therefore wanted to retaliate.

Agent Snead testified that he interviewed Harris about the shooting. Harris said that Cofield shot Harris in the eye, after Cofield, Devin White and the testifying witness Seda followed Harris out of the apartment where the group was gathered. Harris became legally blind in his right eye and his vision in his left eye is impaired.

Defense counsel cross-examined Seda and Agent Snead, but did not call witnesses. The Court finds that both Seda's and Agent Snead's testimony was credible. It further finds that the Government has shown, by a preponderance of the evidence, that Harris shot Cofield, although not necessarily in furtherance of the drug trafficking conspiracy.

## III. LEGAL STANDARDS

"The Government bears the burden of proving the facts supporting the application of a Guidelines provision, and it must do so by a preponderance of the evidence." *United States v. Kent*, 821 F.3d 362, 368 (2d Cir. 2016). "The Federal Rules of Evidence do not apply at sentencing proceedings," *United States v. Gushlak*, 728 F.3d 184, 197 n.10 (2d Cir. 2013) (citing Fed. R. Evid. 1101(d)(3)), and a court may consider any relevant information, "provided that the information has sufficient indicia of reliability to support its probable accuracy," U.S.S.G. § 6A1.3(a). *See United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) ("[F]actual matters considered as a basis for sentence must have some minimal indicium of reliability beyond mere

3

allegation.") (internal quotation marks omitted); *accord United States v. Jenkins*, 768 F. App'x 36, 38 (2d Cir. 2019) (summary order).

Section 2D1.1(b)(1) of the Sentencing Guidelines imposes a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). "The applicability of [this enhancement for] possession of weapons during a narcotics offense is governed by the relevant-conduct sentencing guideline," *i.e.* U.S.S.G. § 1B1.3. *United States v. Smith*, 215 F.3d 237, 240 (2d Cir. 2000). Section 1B1.3 in turn requires that the "acts or omissions" on which the enhancement is based "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1); *see United States v. Wernick*, 691 F.3d 108, 115 (2d Cir. 2012) ("[D]uring" does not connote "purely [in the] temporal sense. To qualify as 'relevant conduct,' the conduct must occur in the course of commission of the offense of conviction.").

The "acts or omissions" must either be the defendant's or others' "jointly undertak[ing] criminal activity" with the defendant. U.S.S.G. § 1B1.3(a)(1). If the defendant is accountable under one of these theories, the Court need not review the alternative theory. U.S.S.G. § 1B1.3, Application Note 2. To establish an enhancement based on the "acts and omissions of others," the "acts and omissions" must be "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity," U.S.S.G. § 1B1.3(a)(1)(B), provided that the "acts or omissions" occurred "during the commission of the" narcotics trafficking at issue, U.S.S.G. § 1B1.3(a)(1). The "court must first determine the scope of the criminal activity the particular defendant agreed to jointly

undertake," which can be "fairly inferred from the conduct of the defendant and others." U.S.S.G. § 1B1.3, Application Note 3(B).

## IV. DISCUSSION

The Government has established, by a preponderance of the evidence, that individuals with whom Cofield was engaged in joint criminal activity possessed firearms in connection with the conspiracy to sell crack cocaine. Such conduct can be imputed to Cofield for purposes of the two-level offense enhancement under U.S.S.G. § 2D1.1(b)(1).

The Government has shown that Cofield agreed with others to sell crack cocaine in the Bronx between from about 2007 to 2017. Specifically, they agreed to store, prepare and sell crack cocaine from the apartment where they all lived. The residents kept "all types of guns" in the apartment. They did so in furtherance of narcotics trafficking, and the possession of guns in connection with this activity was reasonably foreseeable to Cofield. "In order for a defendant's projected Guidelines sentence to be enhanced under § 2D1.1(b)(1), the defendant need not have had personal possession, or even actual knowledge of the weapon's presence; the enhancement is required so long as the possession of the firearm was reasonably foreseeable to the defendant." *United States v. Batista*, 684 F.3d 333, 343 (2d Cir. 2012) (internal quotation marks omitted). Given the decade-long duration of Cofield's participation in the conspiracy, the quantities sold during that time and his leadership position, it was reasonably foreseeable to Cofield that guns were on hand at the location where the crack cocaine was stored, prepared and sold. *See United States v. Bermudez*, 529 F.3d 158, 170 (2d Cir. 2008) ("It is axiomatic that drug dealing and guns go hand in hand"); *United States v. Hernandez*, 85 F. App'x 269, 271 (2d Cir. 2004) (Guns are "frequently used tools of the drug trade").

## V. CONCLUSION

For the reasons stated above, the Court will apply a two-level sentencing enhancement, under U.S.S.G. § 2D1.1(b)(1), in its calculation of Defendant Cofield's offense level. The Court will not apply a two-level enhancement under U.S.S.G. 2D1.1(b)(2), as the Government has withdrawn the request.

Dated: October 3, 2019
       New York, New York

                                        **LORNA G. SCHOFIELD**
                                       **UNITED STATES DISTRICT JUDGE**